**IN THE UNITED STATES DISTRICT COURT FOR MARYLAND**
**GREENBELT DIVISION**

COSMAS OFFIAH
    9128 Glenville Road
    Silver Spring,   MD 20901

And

ESTHER OFFIAH
    9128 Glenville Road
    Silver Spring,   MD 20901

    Plaintiffs

BANK OF AMERICA, N. A.
d/b/a BAC HOME LOANS SERVICING, LP        Case No. _____
100 North Tryon Street
Charlotte, North Carolina 28255
SERVE ON:
    Glenn A. Cline, Esq., Resident Agent
    Ballard Spahr LLp.
    300 East Lombard Street, 18th Floor

And

NATIONSTAR MORTGAGE, LLC
Suite 400
2711 Centerville Road
Wilmington, DE 19808
SERVE ON
    CSC-Lawyers Incorporating Service Company
    7 St. Paul Street, Suite 1660
    Baltimore, MD 21202

    Defendants

**COMPLAINT**
**AND**
**REQUEST FOR JURY TRIAL**

**NATURE OF THE ACTION**

    This action arises out of the Defendants' actions with respect to Plaintiffs' request for

mortgage assistance through the United States Government's Home Affordable Modification

Program ("HAMP"). In February 2009 the Obama administration introduced the Making Home Affordable Program which was designed to help stabilize the economy resulting from the foreclosure crises. The original nineteen page guidelines eventually grew into handbooks which contained expanded guidelines resulting from servicer abuses and efforts to help additional homeowners. While most courts have held that there is no private right of action under HAMP all courts have upheld consumer rights in measuring actions taken by servicers in processing a Request of Mortgage Assistance ("RMA"). A servicer's violation of federal law in administering an "RMA" was not insulated from liability merely because the servicer was acting on a HAMP application.

In February 2012 the Attorneys General from forty-nine states and the Attorney General for the United States announced a twenty-five billion dollar settlement with the top five banks in the United States: Ally/GMAC; Bank of America; Citi; JP Morgan Chase and Wells Fargo. This National Mortgage Settlement arose from the banks' handling of RMA's under HAMP.

This complaint seeks damages under the Real Estate Settlement Procedure Act (RESPA), the Fair Debt Collections and Practices Act (FDCPA) and the Equal Credit Opportunity Act (ECOA).

Like millions of Americans the Offiahs fell victim to the Great Recession of 2008. The Offiahs are a part of the baby boomers that worked hard all of their lives and looked forward to a modest retirement. As naturalized American citizens who immigrated from Nigeria the Offiahs sought the American dream and finally purchased their first and only home in 2000. They paid their bills and put their children through college and/or professional schools. They helped extended members of their family so that the whole family had an opportunity to better themselves.

## JURISDICTION AND VENUE

1. There is complete diversity of citizenship, the amount in controversy is in excess of $75,000 exclusive of costs and the court has jurisdiction under 28 U.S.C.A. § 1332.

2. The matters asserted herein present federal questions and the Court has jurisdiction under 28 U.S.C. § 1331.

3. Additionally, the Court has jurisdiction under any non-federal claims under 28 U.S.C.A. § 1367.

4. Venue is proper because all of the Defendants transact business within the district and the conduct complained of occurred within the district. 28 U.S.C.A. § 1391(b)(2) (West).

## PARTIES AND PLAYERS

5. Plaintiff Cosmas Offiah ("Offiah") is an African-American contractor for the U.S. Government.

6. Plaintiff Esther Offiah (collectively "Offiahs") is an African-American citizen of the United States.

7. Bank of America ("BOA") is BAC Home Loans Servicing, LP a mortgage servicing company wholly owned by Bank of America, N.A., and conducts business in Maryland

8. Defendant Nationstar Mortgage, LLC ("Nationstar") is a limited liability company organized under the laws of the State of Delaware, headquartered in the State of Texas, with its principal place of business in the State of Texas.

## FACTUAL BACKGROUND COMMON TO ALL COUNTS

9. Plaintiff Cosmos Offiah is a naturalized citizen of the United States and immigrant from Nigeria.

10. Plaintiff Esther Offiah is a naturalized citizen of the United States and an immigrant from Nigeria.

11. Mr. and Mrs. Offiah were married in 1970 and have three adult children.

12. The Offiahs have one additional person living with them, Polycarp Offiah born in 1953. Polycarp suffers from a mental and physical handicap and the Offiahs take care of his needs.

13. Plaintiff Cosmos Offiah has a Master's Degree in Public Planning from University of the District of Columbia.

14. Plaintiff Esther Offiah retired as a nursing assistant having received training as a midwife in Nigeria.

15. Plaintiff Cosmos Offiah is a seventy-one year old retired civil servant who worked for the District of Columbia Government as a civil engineering technician. Specifically, Mr. Offiah was a construction inspector for roads and bridges.

16. Plaintiff Cosmos Offiah works part time when he can to help bring in additional income as needed.

17. Plaintiff Cosmos Offiah suffers from heart problems and diabetes both of which limit his ability continue part time employment.

18. Plaintiff Esther Offiah is a seventy-two year old cancer survivor (colon cancer) who must undergo regular medical early detection tests.

19. Throughout their lives the Offiahs regularly helped extended members of their family, doing so as a result of a cultural commitment to the extended family.

20. In 2000 the Offiahs purchased the home where they presently live located at 9128 Glenville Road, Silver Spring, MD 20901.

21. On October 12, 2007 the Offiahs refinanced their home by borrowing $313,127.00 from 1st Preference Mortgage Corporation for thirty years at 6.5% interest.

22. The Offiahs made all payments on time through August, 2012.

23. However, in late 2011 the Offiahs began to have financial difficulties due to deteriorating health affecting Mr. Offiah's ability to work.

24. The Offiahs filed a Request for Modification ("RMA") through the Home Affordable Modification Program ("HAMP").[1]

25. On May 17, 2012 the Offiahs asked BOA for mortgage modification through the HAMP section of the MHA. EXHIBIT 1 Bates 0058.

26. BOA notified the Offiahs that their RMA could not be processed because there was an outstanding lien on the property.

27. The Offiahs immediately paid off the lien to the Home Owner's Association in the amount of $1,500 and immediately faxed a copy of the satisfied payment to BOA.

28. On October 12, 2012 BOA sent a letter stating "the workout assistance you have requested is not an option." EXHIBIT 2.

29. On November 19, 2012 the Offiahs hired counsel for the purposes reviewing the prior RMA and submitting a new RMA.

30. On November 26, 2012 the Offiahs submitted a new RMA including the following documents (Letter included as EXHIBIT 3):

| | | |
|---|---|---|
| RMA application | Bates # | 0042- 0044 |
| 2010 and 2011 federal and state tax returns | Bates # | 0001- 0025 |
| 4506-T | Bates # | 0026- 0027 |
| Cosmos Offiah paystubs | Bates # | 0028- 0029 |
| Cosmos Offiah checking acct stmt. Sept. & Oct. | Bates # | 0030- 0035 |
| Esther Offiah checking acct stmt. Sept. & Oct. | Bates # | 0036- 0041 |
| Cosmos Offiah 2011 Soc. Security Benefit Statement | Bates # | 0045 |

---

[1] President Obama, in February 2009, outlined the Making Home Affordable ("MHA") program in an effort to stabilize the housing market. MHA was and is a voluntary program whereby the Department of Treasury provides financial aid to homeowners and incentives to servicers who participated in MHA. Bank of America was one of these servicers.

| | | |
|---|---|---|
| Esther Offiah 2011 Soc. Security Benefit Statement | Bates # | 0046 |
| WSSC utility bill | Bates # | 0051- 0054 |
| Hardship letter | Bates # | 0055 |
| Dodd-Frank Certification | Bates # | 0056 |

31. In a letter dated November 14, 2012 BOA wrote to Offiahs informing them that the servicing of their loan was being transferred to Nationstar beginning December 3, 2012. EXHIBIT 4.

32. Neither BOA nor Nationstar has acknowledged receipt of the November 26, 2012 RMA.

33. Neither BOA nor Nationstar had taken any action on the November 26, 2012 RMA.

## COUNT I
## VIOLATIONS OF 12 U.S.C.A 2605(E)
## QUALIFIED WRITTEN REQUEST
## (AGAINST NATIONSTAR)

34. The Offiahs incorporate paragraphs 1 through 33 as if fully stated herein.

35. The Offiahs are borrowers as referred to in 12 U.S.C.A. § 2605(b)(1) (West) of RESPA.

36. Nationstar is a servicer as referred to 12 U.S.C.A. §2605(b)(1) (West) of RESPA.

37. The loan referred to herein is a federally related mortgage.

38. On January 23, 2013 the Offiahs submitted a Qualified Written Request as defined by 12 U.S.C.A. 2605(e)(1)(B), to Nationstar ("Nationstar QWR"). EXHIBIT 5.

39. The Offiahs' Nationstar QWR requested the following documents:

   1. Copy(ies) of any promissory note(s) executed by the borrower;

   2. The name of the investor that holds the borrower's loan.

3. The total amount needed to reinstate or bring the account current, and the amount of the principal obligation under the mortgage;

4. Documentation that shows any enforceable interest in the promissory note and mortgage (or deed of trust) under applicable state law;

5. Documentation that shows that you or your principal is a proper party to the foreclosure action.

6. All records that support any statement made in any foreclosure action including pleading(s), affidavit of indebtedness or similar affidavits in court foreclosure proceedings that sets forth the basis for asserting that the foreclosing party has the right to foreclose.

7. The date through which the borrower's obligation is paid;

8. The date of the last full payment;

9. The current interest rate in effect for the loan (if the rate is effective for at least 30 days);

10. The date on which the interest rate may next reset or adjust (unless the rate changes more frequently than once every 30 days);

11. The amount of any prepayment fee to be charged, if any;

12. A description of any late payment fees;

13. If the original note is lost or otherwise unavailable, all correspondence that was used to establish ownership of the note and the right to enforcement.

14. Any records that identify all notarizations of Servicer documents executed by each notary employed by Servicer.

15. A telephone number or electronic mail address that may be used by the obligor to obtain information regarding the mortgage;

16. For any affidavit that relied on a review of business records for the basis of its affidavit, the referenced business record;

17. Documentation of all efforts made to ensure that you have reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information;

18. A complete payment history, including but not limited to the dates and amounts of all the payments Mr. and Ms. Offiah have made on the loan to date;

19. Documents to ensure that your or the foreclosing entity has a documented enforceable interest in the promissory note and mortgage (or deed of trust) under applicable state law, or is otherwise a proper party to the foreclosure action.

20. A breakdown of the amount of claimed arrears or delinquencies, including an itemization of all fees charged to the account;

21. An itemization detailing any corporate advances made by you;

22. The payment dates, purpose of payment and recipient of any and all foreclosure fees and costs that have been charged to his account;

23. The payment dates, purpose of payment and recipient of all escrow items charged to Mr. and Ms. Offiah account since Nationstar commenced servicing the account;

24. A breakdown of the current escrow charge showing how it is calculated and the reasons for any increase within the last 24 months;

25. A copy of any annual escrow statements and notices of a shortage, deficiency or surplus, sent to Mr. and Ms. Offiah within the last three (3) years;

40. On February 11, 2013 Nationstar responded to the Nationstar QWR. The following table indicates either a deficiency relied on by Offiah or a failure to respond to the items in the QWR:

| Request No. | Request | Offiah Position |
| --- | --- | --- |
| 2. | The name of the investor that holds the borrower's loan. | Nothing was produced and Offiahs are relying on the non-production to indicate that no records exist or alternatively that the records exist but were not produced. |
| 4. | Documentation that shows that you or your principal is a proper party to the foreclosure action. | Nothing was produced and Offiahs are relying on the non-production to indicate that no records exist or alternatively that the records exist but were not produced. |
| 6. | All records that support any statement made in any foreclosure action including pleading(s), affidavit of indebtedness or similar affidavits in court foreclosure proceedings that sets forth the basis for | Did not produce the Assignment of the Deed of Trust, Bates 590 and 591.<br><br>Other than the Deed of trust nothing was produced and Offiahs are relying |

| | | |
|---|---|---|
| | asserting that the foreclosing party has the right to foreclose. | on the non-production to indicate that no records exist or alternatively that the records exist but were not produced. |
| 13. | If the original note is lost or otherwise unavailable, all correspondence that was used to establish ownership of the note and the right to enforcement. | Nothing was produced and the Offiahs are relying on the fact that nothing was produced or alternatively that the records exist but were not produced. |
| 14. | Any records that identify all notarizations of Servicer documents executed by each notary employed by Servicer. | Nothing was produced and Offiahs are relying on the non-production to indicate that no records exist or alternatively that the records exist but were not produced. |
| 15. | For any affidavit that relied on a review of business records for the basis of its affidavit, the referenced business record; | Nothing was produced and Offiahs are relying on the non-production to indicate that no records exist or alternatively that the records exist but were not produced. |
| 17. | Documents to ensure that your or the foreclosing entity has a documented enforceable interest in the promissory note and mortgage (or deed of trust) under applicable state law, or is otherwise a proper party to the foreclosure action. | Nothing was produced and Offiahs are relying on the non-production to indicate that no records exist or alternatively that the records exist but were not produced. |
| 20. | A breakdown of the amount of claimed arrears or delinquencies, including an itemization of all fees charged to the account; | Nothing was produced and Offiahs are relying on the non-production to indicate that no records exist or alternatively that the records exist but were not produced. |
| 21. | An itemization detailing any corporate advances made by you; | Nothing was produced and Offiahs are relying on the non-production to indicate that no records exist or alternatively that the records exist but were not produced. |
| 22. | The payment dates, purpose of payment and recipient of any and all foreclosure fees and costs that have been charged to his account; | Nothing was produced and Offiahs are relying on the non-production to indicate that no records exist or alternatively that the records exist but were not produced. |

41.   All documents requested were proper requests for a QWR under the RESPA laws.

42. The Offiahs incorporate the damages outlined in Paragraph 70 as if fully asserted herein.

## COUNT II
### VIOLATIONS OF 15 U.S.C.A 1692F
### UNFAIR PRACTICES UNDER FDCPA
### AGAINST NATIONSTAR

43. The Offiahs incorporate paragraphs 1 through 33 as if fully stated herein.

44. The Offiahs areConsumers as defined under 15 USCA § 1692a(3) of the FDCPA.

45. Nationstar is a debt collector as defined in 15 USCA 1692a(6) of the FDCPA.

46. On information and belief Nationstar hired the law firm of Morris Hartwick Schneider to represent them in a foreclosure action.

47. On May 10, 2013 the law firm of Morris Hartwick Schneider ("MHS") wrote to the Offiahs indicating that they had been retained by Nationstar to collect on the allegedly defaulted loan.  Exhibit 6

48. Morris Hartwick Schneider is a debt collector as defined in 15 USCA 1692a(6) of the FDCPA.

49. At all relevant times to the action herein MHS acted as the attorney and agent for Nationstar and acted within its' scope of agency and representation.

50. On May 23, 2013 counsel for Offiahs sent a letter to MHS asking for debt verification under the Fair Debt Collection Procedure Act ("FDCPA Letter").  EXHIBIT 7

51. On June 3, 2013 MHS responded to the FDCPA Letter.  EXHIBIT 8.

52. On February 11, 2013 Nationstar produced Bates 0413 in response to the



Nationstar QWR and on June 3, 2013 MHS produced Bates 0576 in response to the MHS FDCPA Letter. EXHIBITS 9 and 10, respectively.

53. Bates 0413 purports to be the last/endorsement page of the Note executed by Offiah as produced by Nationstar.

54. Bates 0576 purports to be the last/endorsement pages of the Note executed by Offiah as produced by MHS.

55. Bates 0413 cannot be a copy of the original Note because it contains a pasted marking, as circled.

56. Bates 0576 contains alleged endorsements from Countrywide. If Countrywide was somehow involved in this Note then Nationwide should have had a copy of the Countrywide alleged endorsements.

57. In violation of 15 USCA 1692e(5) Nationstar threatened to take action that it could not legally take.

58. Alternatively MHS acting as an agent for Nationstar and acting within the scope of their authority threatened to take action that it could not legally take.

59. The Offiahs incorporate the damages outlined in Paragraph 70 as if fully asserted herein.

## COUNT III
## VIOLATIONS OF 12 U.S.C.A 2605(E)
## QUALIFIED WRITTEN REQUEST
## (AGAINST BANK OF AMERICA)

60. The Offiahs incorporate paragraphs 1 through 33 as if fully stated herein.

61. The Offiahs also incorporate paragraphs 39 through 42 and 47 through 59.

62. The Offiahs are borrowers as referred to in 12 U.S.C.A. § 2605(b)(1) (West) of RESPA.

63. Bank of America is a servicer as referred to 12 U.S.C.A. §2605(b)(1) (West) of RESPA.

64. The loan referred to herein is a federally related mortgage.

65. On December 19, 2012 the Offiahs submitted a Qualified Written Request as defined by 12 U.S.C.A. 2605(e)(1)(B), to Bank of America ("BOA QWR").  EXHIBIT 11

66. Offiahs' BOA QWR requested the same documents as referred to in paragraph 40, incorporated herein by reference.

67. On December 24, 2012 BOA acknowledged receipt of the BOA QWR and stated that they were in the process of obtaining the documentation requested.  EXHIBIT 12

68. BOA failed to provide any of the requested documentation.

69. The Offiahs were damaged as a result of BOA's failure to comply with the QWR because:

    a. Bates 0413 purports to be the last/endorsement page of the Note executed by Offiah as produced by Nationstar.

  b. Bates 0576 purports to be the last/endorsement pages of the Note executed by Offiah as produced by MHS.

  c. Bates 0413 cannot be a copy of the original Note because it contains a pasted marking, as circled.

  d. Bates 0576 contains alleged endorsements from Countrywide. If Countrywide was somehow involved in this Note then Nationwide should have had a copy of the Countrywide alleged endorsements.

  e. As the servicing predecessor of Nationwide, BOA should have had all documentation that it should have transmitted to Nationwide as a part of the servicing transfer;

  f. The failure of BOA to comply with the QWR denied the Offiahs the ability to verify the holder of the Note and who had authority to modify the Note.

70. The Offiahs suffered damages:

  a. The Offiahs were not able to properly identify the holder of the Note and make a meaningful RMA through HAMP as well as identify any restrictions that the owner of the Note may have on whether the Note can be modified;

  b. The Offiahs were placed at greater danger of losing their home;

  c. The Offiahs suffered anxiety, depression, and stress as a direct and proximate result of illegal conduct of BOA, Nationstar and MHS;

  d. The Offiahs suffered acute pain the their legs and body causing them to use wheelchairs and walkers;

  e. The Offiahs suffered from lack of sleep for fear of the next illegal activity of the Defendants;

  f. The Offiahs, who are not familiar with American laws and coming from Nigeria, continue to have mental and physical problems out of fear that they will be evicted from their home.

## VIOLATIONS OF 15 U.S.C.A. § 1691(d)(1) (WEST)
### EQUAL CREDIT OPPORTUNITY ACT (ECOA)
### (AGAINST BANK OF AMERICA AND/OR NATIONSTAR)

71. The Offiahs incorporate paragraphs 1 through 33 as if fully stated herein.

72. The Offiahs are applicants as governed by ECOA, 15 U.S.C.A. § 1691a(b) (West).

73. A mortgage modification is an extension of credit under ECOA.

74. BOA is a "creditor" as governed and defined by ECOA, 15 U.S.C. §1691(a)(e) at all times relevant hereto.

75. Nationstar is a "creditor" as governed and defined by ECOA, 15 U.S.C. §1691(a)(e).

76. 15 U.S.C. §1691(d)(6) defines "adverse action" as a denial or revocation of "credit", a change in terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or substantially the terms requested." 15 U.S.C. §1691(d)(6)

77. The term "credit" means the right granted by a debtor to defer payment of a debt or to incur debts and defer its payment…and defer payment thereof. 15 U.S.C. § 1691a (d); 12 C.F.R. §202.2(j).

78. 15 U.S.C. §1691(d)(1) requires "within thirty days (or such longer reasonable time as specified in regulations of the Bureau for any class of credit transaction) after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application.

79. The November 26, 2012 RMA submission constituted a complete submission of an application for credit.

80. BOA and/or Nationstar failed to give any notice of action taken on the RMA submitted on November 26, 2012.

**WHEREFORE**, your Plaintiffs pray that this Court:

    A.    Enter judgment against BOA in the amount of $300,000 compensatory and $500,000 for non-economic damages;

B.  Enter judgment against Nationstar in the amount of $300,000 compensatory and $500,000 for non-economic damages;

C.  Award them counsel fees and costs; and

D.  Grant them such other and further relief as the nature of their cause requires.

## COUNT IV
### VIOLATIONS OF 15 U.S.C.A. § 1691(d)(2) (WEST)
### EQUAL CREDIT OPPORTUNITY ACT (ECOA)
### (AGAINST BOA AND NATIONSTAR)

81. The Offiahs incorporate paragraphs 1 through 33 as if fully stated herein.

82. The Offiahs are applicants as governed by ECOA, 15 U.S.C.A. § 1691a(b) (West).

83. A mortgage modification is an extension of credit under ECOA.

84. A mortgage modification can also include reduction in principal and is therefore not excluded from the requirement of 15 U.S.C.A. § 1691(d)(2) (WEST) stating the reason for any adverse action.

85. Nationstar is a "creditor" as governed and defined by ECOA, 15 U.S.C. §1691(a)(e).

86. 15 U.S.C. §1691(d)(2) requires "that each applicant against whom "adverse action" is taken shall be entitled to a statement of reason for such action from the creditor." 15 U.S.C. §1691(d)(2).

87. 15 U.S.C. §1691(d)(6) defines "adverse action" as a denial or revocation of "credit", a change in terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or substantially the terms requested." 15 U.S.C. §1691(d)(6)

88. The term "credit" means the right granted by a debtor to defer payment of a debt or to incur debts and defer its payment…and defer payment thereof. 15 U.S.C. § 1691a (d); 12 C.F.R. §202.2(j).

89. The November 26, 2012 RMA submission constituted a complete submission of an application for credit.

90. Even though the Offiahs were admittedly delinquent under an existing credit arrangement they are not excluded from receiving specific reasons for the adverse action because the servicer had the option to reduce the principle on the property which would not be additional credit to the existing credit arrangement.

91. An RMA through HAMP requests relief in a number of ways including a reduction in principal and therefore is not an application to extend additional credit under an existing credit application where the applicant is delinquent.

92. The Handbook for Servicers of Non-GSE Mortgages, version 4.2, ("Handbook") is a guideline for all servicers participating in the HAMP program.  EXHIBIT 13 (only relevant portions included).

93. There is a four step process for calculating the terms of a modification:
    a. capitalization
    b. interest rate reduction
    c. term extension
    d. principal forbearance.

EXHIBIT 13, Handbook, p 95-96.

94. Capitalization includes the amount due under the terms of the mortgage, as amortized, plus allowable capitalization items, including past due interest.  Accordingly the

terms of the requested modification does not always include an application to extend additional credit.

94. Moreover, servicers have the ability to reduce principal in order to meet the HAMP guidelines:

> 6.4 Principal Reduction Alternative
>
> Servicers must evaluate any mortgage loan that is being considered for HAMP with a mark-to market LTV ratio greater than 115 percent using both the applicable standard modification waterfall (as described in Section 6.3.1 or 6.3.2, as applicable) and the applicable alternative modification waterfall (as described in Section 6.4.3.1 or 6.4.3.2, as applicable) that includes principal reduction as the required second step in the waterfall. When determining the loan's UPB for deciding whether to evaluate the loan under the applicable alternative waterfall, (i) for HAMP Tier 1, servicers should include any amount that would be capitalized in accordance with Section 6.3.1.1 of this Chapter and (ii) for HAMP Tier 2, the Base NPV Model will not include the amount capitalized in accordance with Section 6.3.2.1 of this Chapter. Although servicers are only required to evaluate loans that are being considered for HAMP with a mark-to-market LTV ratio greater than 115 percent for PRA, servicers may evaluate loans with a lower mark-to-market LTV ratio using the applicable alternative modification waterfall.
>
> * * * *

EXHIBIT 13, Handbook, p. 96.

96. Since Servicers "must evaluate any mortgage loan that is being considered for HAMP".

97. A HAMP application is not an application solely to extend additional credit but can and often does include reduction in principal.

98. Instead of disclosing the reason for the adverse action and allowing the Offiahs to cure the RMA Nationstar threated foreclosure against the Offiahs.

17

99. BOA's and Nationstar's failure to specify the reasons for the adverse action deprived the Offiahs of the opportunity to cure their application (if deficient).

**WHEREFORE**, your Plaintiffs pray that this Court:

A. Enter judgment against BOA in the amount of $300,000 compensatory and $500,000 for non-economic damages;

B. Enter judgment against Nationstar in the amount of $300,000 compensatory and $500,000 for non-economic damages;

C. Award them counsel fees and costs; and

D. Grant them such other and further relief as the nature of their cause requires.

## PRAYER FOR JURY TRIAL

100. Plaintiffs demand a jury trial.

_____/s/_____
Cosmos Offiah

_____/s/_____
Esther Offiah

                        Respectfully submitted

                        The Law Office of Gerald Solomon, PA

                        _____/s/_____
                        By Gerald Solomon
                        Fed Bar 04287
                        9857 Majestic Way
                        Boynton Beach, FL 33437
                        (561) 735-3536
                        Jerry@saveyourdream.us