IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

COSMAS OFFIAH, et al.

       v.

BANK OF AMERICA, N.A., et al.

:
:
:
:
:
:
:

Civil Action No. DKC 13-2261

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this consumer lending action are a motion to dismiss filed by Defendant Bank of America N.A. ("Bank of America") (ECF No. 17) and a motion to dismiss filed by Defendant Nationstar Mortgage LLC ("Nationstar") (ECF No. 19). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, both motions will be granted in part and denied in part.

**I.  Background**

    **A.  Factual Background**

In 2000, Plaintiffs Cosmas Offiah and his wife, Esther Offiah, purchased a home located at 9128 Glenville Road, Silver Spring, MD 20901. (ECF No. 1 ¶ 20).[1] On October 12, 2007, the

_____

[1] The following facts are either set forth in the complaint, supported by documents referenced or relied upon in the complaint, or are matters of public record of which the court is permitted to take judicial notice. *American Chiropractic Assoc. v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4ᵗʰ Cir. 2004).

Offiahs refinanced their home by borrowing $313,127 from First Preference Mortgage Corporation for thirty years at an interest rate of 6.5 percent. (*Id.* ¶ 21). Bank of America was the loan servicer for Plaintiffs' refinanced mortgage loan. According to the complaint, the Offiahs made timely payments on the refinanced loan until August 2012. (*Id.* ¶ 22). In late 2011, the Offiahs allegedly began to have financial difficulties due to Mr. Offiah's deteriorating health. (*Id.* ¶ 23). On May 17, 2012, the Offiahs submitted to Bank of America a request for modification ("RMA") through the Home Affordable Modification Program ("HAMP"). (*Id.* ¶¶ 24-25). Bank of America notified the Offiahs that their RMA could not be processed because there was an outstanding lien on the property. (*Id.* ¶ 26). The complaint asserts that the Offiahs immediately paid the lien to the Homeowner's Association in the amount of $1,500 and faxed a copy of the satisfied payment to Bank of America. (*Id.* ¶ 27). In response, Bank of America sent a letter on October 2, 2012 stating that "[t]he workout assistance you have requested is not an option." (ECF No. 1-2).[2]

On November 19, 2012, the Offiahs hired counsel to review the prior RMA and submit a new RMA to Bank of America. On November 14, 2012, Bank of America wrote to the Offiahs

---

[2] Plaintiffs include this letter as an exhibit to the complaint.

informing them that the servicing of their loan was being transferred to Nationstar Mortgage LLC ("Nationstar") beginning on December 4, 2012. (ECF No. 1-4). On November 26, 2012, the Offiahs submitted a new RMA to Bank of America. (ECF No. 1 ¶ 30). Plaintiffs assert that Bank of America and Nationstar did not acknowledge receipt or take any action in connection with the November 26, 2012 RMA from them.

Plaintiffs allege that on December 19, 2012, they sent what they classify as a qualified written request ("QWR") to Bank of America, requesting twenty-five categories of documents and information. (*Id.* ¶ 65; ECF No. 1-11). They state that on December 24, 2012, Bank of America acknowledged receipt of the QWR and stated that it was "in the process of obtaining the documentation and information necessary to address your questions." (ECF No. 1-12). Yet Bank of America allegedly failed to provide any requested documentation. (ECF No. 1 ¶ 68). Plaintiffs assert that "[t]he failure of [Bank of America] to comply with the QWR denied the Offiahs the ability to verify the holder of the Note and who had authority to modify the Note." (*Id.* at 13). On January 23, 2013, Plaintiffs sent the same letter to Nationstar. (*Id.* at 6-8). Nationstar responded on February 11, 2013, but Plaintiffs believe that the response was deficient because ten of the twenty-five documents requested were not provided in the response. (*Id.* at 8-9).

3

**B.    Procedural Background**

On July 15, 2013, a foreclosure proceeding against the Offiahs was initiated in the Circuit Court for Montgomery County. *See Wittstadt, et al. v. Offiah, et al.*, Case No. 379041V. Plaintiffs filed a complaint in this court on August 2, 2013. (ECF No. 1). The complaint alleges violations of: the Real Estate Settlement Procedures Act ("RESPA") against both Bank of America and Nationstar (counts I & III); the Fair Debt Collection Practices Act ("FDCPA") (count II) against Nationstar only; and two counts for violations of the Equal Credit Opportunity Act ("ECOA") under 15 U.S.C. §§ 1691(d)(1) and (d)(2) against both Nationstar and Bank of America.[3] (ECF No. 1). Bank of America and Nationstar filed separate motions to dismiss on December 13, 2013. (ECF Nos. 17 & 19). Plaintiff opposed both motions (ECF No. 22), and Defendants replied (ECF Nos. 24 & 25).

**II.  Standard of Review**

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A plaintiff's complaint need only satisfy the standard of Rule

---

[3] One of the counts in the complaint alleging a violation of 15 U.S.C. § 1691(d)(1) against "Bank of America and/or Nationstar," is not numbered, but precedes count IV. (ECF No. 1, at 13).

8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (*citing Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

## III. Analysis

### A.   RESPA Violations

Plaintiffs assert RESPA violations against Nationstar and Bank of America in counts I and III of their complaint. Plaintiffs argue that the December 19, 2012 letter to Bank of America and the January 23, 2013 letter to Nationstar constituted QWRs under RESPA and that both Bank of America and Nationstar failed to respond properly under RESPA.

### 1.   December 19, 2012 Letter to Bank of America

Bank of America asserts that the RESPA claim against it fails for three reasons: (1) the December 19, 2012 letter does not qualify as a QWR; (2) Bank of America did not service Plaintiffs' loan at the time of the QWR because all servicing had been transferred to Nationstar; and (3) Plaintiffs fail to allege actual damages arising from the failure to respond by Bank of America. (ECF No. 17-1, at 5). Because Plaintiffs have not alleged actual damages under RESPA, the court need not consider alternative grounds for dismissal.

Under Section 2605(f), an individual plaintiff must plead either actual damages as a result of the RESPA violation or "a pattern or practice of noncompliance" with RESPA requirements. *See* 12 U.S.C. § 2605(f)(1); *Minson v. CitiMortgage, Inc.*, Civ. Action No. DKC 12-2233, 2013 WL 2383658, at *5 (D.Md. May 29, 2013). Bank of America asserts that Plaintiffs "fail to allege

actual damages directly or proximately caused by [Bank of America's] alleged failure to respond to their [a]lleged QWR." (ECF No. 17-1, at 10). Plaintiffs allege the following damages in their complaint: (1) the Offiahs were not able to properly identify the holder of the Note and make a meaningful request for modification through HAMP as well as identify any restrictions that the owner of the Note may have on whether the Note can be modified; (2) the Offiahs were placed at greater danger of losing their home; (3) the Offiahs suffered anxiety, depression, and stress as a direct and proximate result of illegal conduct of Bank of America; (4) the Offiahs suffered acute pain in their legs and body causing them to use wheelchairs and walkers; (5) the Offiahs suffered from lack of sleep for fear of the next illegal activity of the Defendants; and (6) the Offiahs, "who are not familiar with American laws and coming from Nigeria, continue to have mental and physical problems out of fear that they will be evicted from their home." (ECF No. 1, at 13).

Plaintiffs appear to take the position that the failure to respond to their December 2012 letter affected their request for modification, which resulted in emotional distress for them. As Bank of America points out, however, "Plaintiffs have no legal or statutory right to a loan modification under HAMP." (ECF No. 17-1, at 11). In the complaint, Plaintiffs also assert that

they were damaged as a result of Bank of America's failure to respond because they were unable to verify the holder of the Note, and could not obtain the original Note or ascertain Countrywide's alleged involvement in the Note. (ECF No. 1, at 12-13). None of these matters relate to servicing of the loan, thus Bank of America would not have been obligated to respond to general inquiries regarding the validity of the Note under RESPA. *See, e.g., Ward v. Security Atl. Mortg. Electronic Registration Systems, Inc.*, 858 F.Supp.2d 561, 574-75 (E.D.N.C. 2012) (finding that a letter seeking, *inter alia*, copies of loan documents, assignments of the deed of trust and promissory note, and a loan transactional history did not qualify as a valid QWR). Consequently, Plaintiffs have not alleged any actual or pecuniary damages related to Bank of America's failure to respond to their December 2012 letter. The fact that Plaintiffs allegedly suffered physical and mental problems out of fear that they will be evicted (for having defaulted on their mortgage loan) does not explain how by failing to respond to the December 2012 letter, Bank of America purportedly caused this damage. *See Radisi v. HSBC Bank USA, Nat. Ass'n*, No. 5:11 CV 125-RLV, 2012 WL 2155052, at *5 (W.D.N.C. June 13, 2012) ("Plaintiff's assertion of damages without any supporting facts as to how he was damaged by the failure to respond to the QWR's is insufficient to establish a claim for violation of RESPA.");

*Willis v. Bank of Am. Corp.*, Civ. Action No. ELH-13-02615, 2014 WL 3829520, at \*31 (D.Md. Aug. 1, 2014) (finding insufficient under RESPA the conclusory assertion that actual damages arose from the failure to adequately respond to a letter).

In their opposition to Bank of America's motion to dismiss, Plaintiffs cite *Coulibaly v. JP Morgan Chase Bank, N.A.*, Civ. Action No. DKC 10-3517, 2012 WL 3985285, at \*6 (D.Md. Sept. 7, 2012), for the proposition that actual damages include mental anguish and other non-monetary injury. (ECF No. 22, at 4). That opinion, however, did not address any RESPA claims; instead, the opinion noted that the actual damages recoverable *under the ECOA*, "may include . . . mental anguish." *Id.* Here, Plaintiffs' conclusory assertion that they suffered "anxiety, depression, and stress as a direct and proximate result of illegal conduct of [Bank of America]" is insufficient to allege actual damages under RESPA. *See, e.g., Ross v. FDIC*, 625 F.3d 808, 818 (4th Cir. 2010) ("[C]onclusory statements that the plaintiff suffered emotional distress . . . [do not] support[] an award of compensatory damages." (citation and internal quotation marks omitted)); *McCray v. Federal Home Loan Mortg. Corp.*, Civil Action No. GLR-13-1518, 2014 WL 293535, at \*14 (D.Md. Jan. 14, 2014) ("that McCray simply alleges emotional distress, without supporting facts, is insufficient to satisfy the specificity by which emotional distress claims must be

stated." (internal citations omitted)); *Luther v. Wells Fargo Bank*, No. 4:11cv00057, 2012 WL 4405318, at *7 n.6 (W.D.Va. Aug. 6, 2012) (same).

Accordingly, the RESPA claim against Bank of America will be dismissed.

### 2.   January 23, 2013 Letter to Nationstar

Like Bank of America, Nationstar argues that Plaintiffs have not alleged actual damages as required by RESPA. Plaintiffs allege the same damages against Nationstar as discussed above.  For the same reasons discussed above concerning the damages allegations against Bank of America, Plaintiffs have not alleged actual damages caused by Nationstar's failure to respond fully to every request made in their letter.  Their conclusory allegations of stress in connection with a denial of their request for a loan modification and fear of eviction are insufficient; it is unclear how Nationstar's failure to respond to ten items in their letter – none of which appear to relate to servicing anyway – caused this damage.  Accordingly, the RESPA claim against Nationstar will also be dismissed.

### B.   FDCPA

Plaintiffs allege an FDCPA claim against Nationstar only. Plaintiffs assert that Nationstar hired the law firm of Morris Hartwick Schneider ("MHS") to represent it in a foreclosure

action, and that MHS wrote to the Offiahs on May 10, 2013 indicating that the firm was retained to collect on the defaulted loan. (ECF No. 1-6). Plaintiffs assert that they responded to the letter on May 23, 2013, requesting: (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) verification or copy of any judgment (if applicable); and (4) proof of license to collect debts in Maryland. (ECF No. 1-7). MHS responded on June 3, 2013, and enclosed a copy of the following documents: Affidavit of Debt and Right to Foreclose; Note; Deed of Trust; Assignment of Deed of Trust; Corporation Assignment of Deed of Trust; and Deed of Appointment of Substitute Trustees. (ECF No. 1-8). Plaintiffs assert that MHS produced a different "last/endorsement page of the Note" from the one Nationstar produced in response to the January 2013 letter. (ECF No. 1, at 11). Plaintiffs contend that one version of the Note contained endorsements from Countrywide, and "[i]f Countrywide was somehow involved in this Note then Nationwide should have had a copy of the Countrywide alleged endorsement." (*Id.* ¶ 56). Thus, Plaintiffs conclude that Nationstar violated 15 U.S.C. § 1692e(5) of the FDCPA by threatening to take action it could not legally take. (*Id.* ¶ 57). Alternatively, Plaintiffs assert that MHS, acting as an agent for Nationstar, threatened to take action it could not legally take. (*Id.* ¶ 58).

The FDCPA "forbids the use of any false, deceptive, or misleading representation or means in debt collection and provides a non-exhaustive list of prohibited conduct." *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135 (4th Cir. 1996). In order to prevail on a FDCPA claim, a Plaintiff must show that:

> (1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.

*Dikun v. Streich*, 369 F.Supp.2d 781, 784 (E.D.Va. 2005) (*citing Fuller v. Becker & Poliakoff*, 192 F.Supp.2d 1361 (M.D.Fla. 2002) (citations omitted)). The Fourth Circuit has adopted the "least sophisticated debtor" standard to determine if a Section 1692e violation has occurred. *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135-36 (4th Cir. 1996). Under this standard, a false statement that would not mislead the "least sophisticated consumer" is not actionable. The Fourth Circuit also has recently opined that a false or misleading statement is not actionable under Section 1692e unless it is material. *Lembach v. Bierman*, 528 F.App'x 297, 302-03 (4th Cir. 2013). Under Section 1692e(5), threatening to take any action that cannot legally be taken or that is not intended to be taken violates the FDCPA. 15 U.S.C. § 1692e(5).

Nationstar argues that Plaintiffs have not established an FDCPA violation because they cannot establish a material false representation made by it or MHS.  It contends that "Plaintiffs were unquestionably in default, and both copies of the Note confirm that Plaintiffs are obligated on the Note and that the Note is payable to the bearer."  (ECF No. 19-1, at 7). Nationstar avers that "[e]ven if the stamps on the face of the copies of the Note differ, Plaintiffs do not dispute that their original signatures appear on the face of both copies, and that as a result, they are indeed indebted to the holder of the Note."  (*Id.* at 8).  In the opposition to Nationstar's motion to dismiss, Plaintiffs repeat the allegations contained in their complaint and again challenge whether Nationstar holds the original note because the copies provided by MHS and Nationstar are allegedly irreconcilable.  (ECF No. 22, at 11).

There are several problems with the FDCPA claim.  First, although Plaintiffs classify Nationstar as a debt collector within the meaning of the statute, the allegations in the complaint suggest that Nationstar acted as a creditor in this instance.  "[C]reditors, mortgagors, and mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the FDCPA."  *Scott v. Wells Fargo Home Mortg. Inc.*, 326 F.Supp.2d 709, 718 (E.D.Va. 2003); *Reyes v. Bank of America, N.A.*, 2013 WL 6012504, at *2 (D.Md. Nov. 12,

2013).  Even assuming Nationstar is a debt collector under the FDCPA and can be vicariously liable for letters sent from its attorneys in an attempt to collect a debt, Plaintiffs have not alleged an FDCPA violation.  There is no dispute that they owed the debt.  *See, e.g., Lembach*, 528 F.App'x at 303 ("The Lembachs were unquestionably in default, and the documents correctly stated the debt.  The Lembachs fail to allege how they, or any consumer, would be misled by a signature by someone other than the trustee that is affixed to a document that was substantively correct."); *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 332 (6th Cir. 2006) (dismissing plaintiff's allegation that defendant violated the FDCPA when she "never denied in her complaint that she owed [defendant] a debt, nor did she claim [defendant] misstated or misrepresented the amount that she owed").

The plaintiff in *Hill v. Wilmington Finance, Inc.*, No. 13-cv-524-RWT, 2013 WL 4659704, at *5 (D.Md. Aug. 29, 2013), premised his FDCPA claim on the argument that "the originating mortgage lenders, and others alleged to have ownership, have unlawfully sold, assigned, and/or transferred their ownership and security interest in a Promissory Note and Deed of Trust related" to the property.  The court held that plaintiff's allegations failed to state a claim for which relief can be granted under federal law.  Plaintiffs' FDCPA claim here suffers from the same infirmity.  Plaintiffs have cited no authority for

14

the proposition that Nationstar needed to hold the original Note in order to collect payments on the defaulted loan. The conclusory allegation that Nationwide and/or MHS threatened to take an action it could not legally take is insufficient. Although Plaintiffs argue that the Note produced by MHS and Nationstar were not identical, all endorsements on the Note are blank endorsements, thus whoever holds the Note can enforce it. *Johnson v. Prosperity Mortg. Corp.*, Civil Action No. 11-cv-02532-AW, 2011 WL 5513231, at *3 (D.Md. Nov. 3, 2011) ("[w]hen indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed."). As Nationwide points out, "[a]t most, all that Plaintiffs have effectively alleged is that multiple copies of the Note were made at different times and contained in different parties' files, and that in Plaintiffs' opinion, Nationstar should have copies of the Note in all of its various iterations." (ECF No. 19-1, at 18). Plaintiffs have not stated an FDCPA violation, thus this claim will be dismissed.

### C. ECOA

Plaintiffs allege two counts under the ECOA. The first count, which is unnumbered in the complaint, asserts a violation of 15 U.S.C. § 1691(d)(1) against "Bank of America and/or Nationstar." The second count alleges a violation of 15 U.S.C. § 1691(d)(2) against both Bank of America and Nationstar.

1.    **Section 1691(d)(1)**

Plaintiffs invoke the notice provisions of ECOA.  The ECOA – along with its accompanying Regulation B, 12 CFR § 202 *et seq.* – establishes certain notification requirements that a creditor must satisfy.

Relevant here, 1691(d) of the ECOA provides that:

> (1) Within thirty days (or such longer reasonable time as specified in regulations of the Bureau for any class of credit transaction) after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application.
>
> (2) Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor. A creditor satisfies this obligation by —
>
> (A) providing statements of reasons in writing as a matter of course to applicants against whom adverse action is taken; or
>
> (B)  giving written notification of adverse action which discloses (i) the applicant's right to a statement of reasons within thirty days after receipt by the creditor of a request made within sixty days after such notification, and (ii) the identity of the person or office from which such statement may be obtained. Such statement may be given orally if the written notification advises the applicant of his right to have the statement of reasons confirmed in writing on written request.

15 U.S.C. § 1691(d)(1)-(2).  Plaintiffs assert that the failure by Bank of America and Nationstar to respond to the November 26,

2012 RMA violated both provisions of the ECOA.[4]

   a.   **Bank of America**

   Bank of America argues that it was not a creditor within the meaning of the statute because on November 14, 2012, before Plaintiffs submitted their November 26, 2012 RMA, it notified Plaintiffs that Nationstar would be processing pending loan modification requests.   For purposes of the ECOA notice requirement, a "creditor" is "any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit."   15 U.S.C. § 1691a(e).

   Bank of America argues that the notice regarding servicing change, dated November 14, 2012, notified Plaintiffs that "[f]or customers currently participating in or being considered for a loan modification program, [Bank of America] will transfer any supporting documentation you may have submitted to us to Nationstar Mortgage LLC. . . . All information regarding other foreclosure avoidance programs [] will *also* be forwarded to Nationstar Mortgage LLC for processing."   (ECF No. 1-4, at 2)

---

[4] Nationstar contends that Sections 1691(d)(1) and (d)(2) should be analyzed together, but as explained in *Piotrowski v. Wells Fargo Bank, N.A.*, Civ. Action No. DKC 11-3758, 2013 WL 247549, at *7 (D.Md. Jan. 22, 2013), "[s]ubsections (d)(1) and (d)(2) impose separate obligations on creditors."

(emphasis added).   The notice further advised Plaintiffs that "[i]f your loan was awaiting a decision regarding qualification for these programs, that decision will now be made by Nationstar Mortgage, LLC." (*Id.*).   Plaintiffs counter that Bank of America is a creditor obligated to respond under HAMP because it is generally a servicer with "knowledge of foreclosure, securitization and [] a servicer's interaction with HAMP." (ECF No. 22, at 6).   Plaintiffs contend that "[u]nder HAMP[,] servicers gather all information, make initial determinations as to eligibility for the program and makes final decisions subject to any contractual restrictions imposed under any Pooling and Servicing agreement." (*Id.*).

At this juncture, it is inappropriate to dismiss the ECOA claim premised on a violation of Section 1691(d)(1) as to Bank of America.   As explained in *Piotrowski*, 2013 WL 247549, at *7, "[u]nder Subsection 1691(d)(1), a creditor 'must provide notice of *any action*, *whatever that action may be*.'" (emphasis added) (*quoting Ortega v. Wells Fargo Bank, N.A.*, No. 3:11cv01734, 2012 WL 275055, at *4 (N.D.Ohio Jan. 31, 2012)).   Here, Plaintiffs allege that they did not receive any response from Bank of America to the November 26, 2012 RMA.   *See, e.g., Thompson v. JP Morgan Chase Bank, N.A.*, 8:13-cv-01982-WDQ, ECF No. 14, at 17 (D.Md. Aug. 27, 2014) (denying motion to dismiss ECOA claim under Section 1691(d)(1) where plaintiffs alleged they had

submitted a complete application but defendant did not notify them of its actions on the application). Bank of America has pointed to no cases that support its position that the November 14, 2012 notice of a servicing change to Plaintiffs was sufficient to obviate its need to respond to the RMA under Section 1691(d)(1). Accordingly, the Section 1691(d)(1) claim will not be dismissed against Bank of America at this point.[5]

**b.   Nationstar**

Nationstar argues that the Section 1691(d)(1) claim should be dismissed because Plaintiffs "do not plead that they ever sent the November 26, 2012 RMA to Nationstar, that Nationstar received the RMA to consider, or that they ever applied for a loan modification through Nationstar." (ECF No. 19-1, at 10). The RMA, attached as an exhibit to the complaint, reflects that it was directed to Bank of America. Based on the notice of servicing change dated November 14, 2012, it appears that Bank of America should have transferred the RMA to Nationstar. At

---

[5] Both parties also argue that the Section 1691(d)(1) claim should be dismissed because Plaintiffs have not alleged actual damages caused by the parties' failure to respond to the RMA. The damages alleged in the complaint to support the ECOA claims are sufficient at this stage. Both parties cite *Coulibaly*, 2012 WL 3985285, at *6, for the proposition that actual damages must be specifically alleged and proven. That case is inapposite because it involved a motion for summary judgment on the Section 1691(d)(1) claim, *not* a motion to dismiss. As Judge Bennett stated in *Kaswell v. Wells Fargo Bank, N.A.*, Civ. Action No. RDB-13-2315, 2014 WL 3889183, at *6 n.4 (D.Md. Aug. 6, 2014), "damages are not an element of [a] cause of action [under Section 1691(d)(1)]."

this juncture, it is unclear whether Nationstar received the RMA from Bank of America, thus dismissal is inappropriate. Nationstar also seems to imply that the allegations in the complaint do not establish that Plaintiffs submitted a complete application. In *Coulibaly v. J.P. Morgan Chase Bank, N.A.*, No. DKC 10-3517, 2011 WL 3476994, at *16 (D.Md. Aug. 8, 2011), the defendant asserted a similar argument, which was rejected. The motion to dismiss in *Coulibaly* was denied as to Section 1691(d)(1) because creditors have an obligation to provide a timely response even to incomplete applications. Regulation B explains, "[w]ithin 30 days after receiving an application that is incomplete regarding matters that an applicant can complete, the creditor shall notify the applicant either: (i) [o]f action taken[]; or (ii) [o]f the incompleteness." *See* 12 C.F.R. § 202.9(c). Thus, even if Nationstar is correct that the complaint suggests that the RMA was incomplete, it still might have had an obligation to communicate with Plaintiffs within 30 days. See *Thompson*, 8:13-cv-01982-WDQ, ECF No. 14, at 17 (rejecting defendant's argument that failure to submit a complete application by plaintiffs removed the requirement to respond under Section 1691(d)(1)). Accordingly, the Section 1691(d)(1) claim against Nationstar will not be dismissed.

**2. Section 1692(d)(2)**

Plaintiffs assert their second ECOA claim under Section 1691(d)(2), which states that "[e]ach applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor." Bank of America and Nationstar both argue that Plaintiffs have not alleged a violation of Section 1692(d)(2) because they were delinquent on their loan at the time they submitted the RMA on November 26, 2012. An adverse action "does not include a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default, or where such additional credit would exceed a previously established credit limit." 15 U.S.C. § 1691(d)(6). Although Plaintiffs admit in their complaint that "the Offiahs were [] delinquent under an existing credit arrangement," they believe that "they are not excluded from receiving specific reasons for the adverse action because the servicer had the option to reduce the princip[al] on the property which would not be additional credit to the existing credit arrangement." (ECF No. 1 ¶ 90). Plaintiffs reiterate in the opposition to the motions to dismiss that they do "not deny that [their] loan was delinquent under an existing credit arrangement," but at the time the application was made, the "MHA/HAMP process included a servicer's option to reduce the principal of the obligation." (ECF No. 22, at 8). Plaintiffs

believe that Bank of America or Nationstar could have reduced the principal under HAMP guidelines in response to the RMA, which would not constitute extending "additional credit" under the statute, making the exemption for defaulted accounts inapplicable.

Plaintiffs' arguments are unavailing.  The ECOA defines "credit" to mean "the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor." 15 U.S.C. § 1691a(d).  "A modification of an existing loan is an extension of credit for ECOA purposes." *Watts v. JP Morgan Chase Bank, N.A.*, No. 5:11-cv-02780-LHK, 2012 WL 3638537, at *1-3 (N.D.Cal. Aug. 22, 2012).  There is no indication that the statute draws a distinction between deferring payment of debt and reducing the principal in response to an RMA for purposes of determining whether an adverse action has been taken.  Indeed, Judge Quarles recently rejected the very argument plaintiffs raise here, holding that "the request to modify the loan by reducing the amount of principal owed on the loan was not an 'adverse action' requiring a statement of reason from [defendant]," where plaintiffs were delinquent on the loan for which they requested the RMA.  *Thompson*, 8:13-cv-01982-WDQ, ECF No. 14, at 18.  Judge Bennett similarly held that "[t]he case law on this matter is clear – a creditor need not provide an

adverse action notification when it denies a loan modification request by a delinquent borrower." *Casey v. Litton Loan Servicing LP*, Civ. Action No. RDB-11-0787, 2012 WL 502886, at *6 (D.Md. Feb. 14, 2012); *Kaswell*, 2014 WL 3889183, at *4 ("any claim by Kaswell under [] section [1691(d)(2)] is misplaced because Kaswell was already in default when Wells Fargo accelerated his loan. Any action taken by Wells Fargo does not fall within the definition of 'adverse action' and cannot be governed by this section of the ECOA."); *Owens v. Bank of America, N.A.*, 2013 WL 1820769, at *5 (N.D.Cal. Apr. 30, 2013) (granting motion to dismiss without leave to amend on an ECOA notice claim relating to a loan modification application because Plaintiffs were in default at the time of the application). Accordingly, the Section 1691(d)(2) claim against both Bank of America and Nationstar will be dismissed.

## IV.  Conclusion

For the foregoing reasons, both motions to dismiss will be granted in part and denied in part. All claims in the complaint will be dismissed against both Defendants, except the ECOA claim pursuant to Section 1691(d)(1). A separate order will follow.


　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　DEBORAH K. CHASANOW
　　　　　　　　　　　　　　　　　　United States District Judge